```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
```

ERICMANY LTD.,

                      Plaintiff,

      -against-

DOUGLAS JACK AGU D\B\A RUNTOWN, BUGU
ANETO OKEKE, BUG MEDIA LIMITED, BUG
ENTERTAINMENT & MEDIA LIMITED, NIYI
FATOGUN, VIBESLAND ENTERTAINMENT, LLC,
SAVOY ENTERTAINMENT CENTER, LEVEL 13
ULTRA LOUNGE,

                      Defendants.

```
----------------------------------------X
```

**TEMPORARY RESTRAINING ORDER**

16-CV-2777

**MATSUMOTO, United States District Judge:**

       Plaintiff EricMany Ltd. ("Plaintiff" or "EricMany"), a Nigerian music label, brings this action, based upon a contract between plaintiff and defendant, Douglas Jack Agu ("Runtown"), a Nigerian recording artist and resident, seeking injunctive relief against Runtown and Bugu Aneto Okeke, a Nigerian resident, Nigerian corporations, Bug Media Limited and Bug Entertainment and Media Limited,[1] Niyi Fatogun, a resident of Brooklyn, New York, and his corporation Vibesland Entertainment,[2]

---

[1] Hereinafter, references to the "Mr. Okeke" or "Bugu defendants" include Bugu Aneto Okeke, Bug Media Limited and Bug Entertainment and Media Limited.

[2] Hereinafter, references to the "Mr. Fatogun" or the "Vibesland defendants" include Niyi Fatogun and Vibesland Entertainment, LLC.

LLC, a New York entity.[3] Presently before the court is plaintiff's request for a temporary restraining order ("TRO") to enjoin Runtown from appearing, performing or participating in any live show, performance or concert in the United States. Further, plaintiff seeks to enjoin the other named defendants from scheduling, promoting, advertising or arranging any shows, performances or concerts, featuring and/or including Runtown.

**Background**

Plaintiff alleges breach of its agreement between EricMany Ltd. and defendant Runtown, dated August 7, 2015 ("the Agreement"). *See* Affidavit of Prince Okwudili Umenyiora ("Umenyiora Aff.") ¶ 9-10, ECF No. 2 at 17-18 and Agreement, ECF No. 2 at 27-32.[4] Runtown is the sole act signed to EricMany. *See* Umenyiora Aff. ¶ 2, ECF No. 2 at 16. The exclusive Agreement is applicable "worldwide" and provides, *inter alia*, for a renewal by mutual consent for sixty-months, and the parties' mutual agreement to produce, promote, market, perform and release three albums. *See* Agreement ¶¶ 1, 4, ECF No. 2 at 27-29, Umenyiora

---

[3] Plaintiff also named Savoy Entertainment Center and Level 13 Ultra Lounge as defendants in this action. Those parties, however, were dismissed on consent of plaintiff at the June 2, 2016 Show Cause Hearing.

[4] Hereinafter, page number cites refer to pagination assigned by the court's electronic filing system, ECF.

Aff. ¶ 3, ECF No. 2 at 17. The Agreement also provides that it is terminable by either party upon three months written notification, and that any disputes be governed by the laws and processes of the Federal Republic of Nigeria. *Id.* ¶¶ 9-10, ECF No. 2 at 14. Plaintiff alleges that it invested over $600,000 into Runtown's recording and musical career, including a debut album entitled "Ghetto University" and that Runtown has breached their Agreement by planning a "world tour" with the other defendants, but without EricMany's consent or involvement. Umenyiora Aff. ¶¶ 5, 9, ECF No. 2 at 17. Runtown, with the assistance of his manager, defendant Bugu Aneto Okeke, allegedly entered into agreements with Niyi Fatogun, via his music promotion company Vibesland Entertainment, to promote Runtown's U.S. tour. Umenyiora Aff. ¶¶ 9-10, ECF No. 2 at 17-18; Complaint ¶¶ 22-23. The U.S. tour was to begin on June 3, 2016 in California where Runtown was to perform at two clubs. Umenyiora Aff. ¶ 22, ECF No. 2 at 21. Further, plaintiff has alleged that Runtown and the Bugu defendants have made defamatory statements about EricMany via social media. *Id.* at ¶ 21, ECF No. 2 at 21.

Plaintiff seeks to temporarily restrain and enjoin defendants from singing, performing, promoting and permitting the performance of Runtown at any venue until a hearing on its

request for a preliminary injunction. *See generally* ECF No. 2. On June 1, 2016, this court issued an Order to Show Cause and ordered service on all defendants by email or facsimile no later than 10:00 a.m. EDT on June 2, 2016, but reserved decision on the TRO until the Show Cause Hearing. On June 2, 2016 at 2:00 p.m., the court held a Show Cause Hearing. At the hearing plaintiff's counsel and Niyi Fatogun in his individual capacity, and on behalf of his company Vibesland Entertainment, appeared. Runtown nor the Bugu defendants appeared.

At the hearing, plaintiff's counsel represented and Mr. Fatogun agreed that Runtown has since expressed his intent, via social media and by letter, to leave the EricMany label.[5] Mr. Fatogun provided the following testimony which the court found credible: Runtown and Mr. Bugu traveled to Brooklyn, New York to engage Mr. Fatogun's promotion services. As a result of that meeting, the parties agreed that Mr. Fatogun would organize a promotional tour in the U.S. for Runtown's debut album "Ghetto University," and post Runtown's appearances on Vibesland's social media pages. The first leg of the tour would be focused on club appearances where Runtown would not receive compensation

---

[5] Because of the expedited nature of the proceedings, the transcript is not available.

4

for his appearances. The parties expected that the publicity created by the first leg of the U.S. tour would lead to more YouTube views and iTunes purchases of Runtown's music, and ultimately to paid performances at concerts and festivals. Mr. Fatogun spoke with EricMany about his plans to promote Runtown and received what he thought was approval from EricMany. EricMany's counsel responded that EricMany was not involved in Runtown's engagement with Vibesland and learned of the relationship from social media.

After Mr. Fatogun learned of the dispute between Runtown, the Bugu defendants and EricMany, Mr. Fatogun told all parties that he wanted no involvement and canceled Runtown's appearances at the two clubs in California. Further, Mr. Fatogun stated his intention to end his engagement with Runtown and the Bugu defendants unless and until plaintiff and Runtown confirm in writing that he and Vibesland may promote Runtown. In the meantime, Mr. Fatogun stated that, the planned U.S. tour will be cancelled and Mr. Fatogun will remove all promotional materials relating to Runtown's tour from all mediums within his control. Mr. Fatogun has not posted any negative information on social media regarding plaintiff or Runtown. Mr. Fatogun requested that he and Vibesland be dismissed from this action.

**Legal Standards**

"[T]he standard for relief applicable to a temporary restraining order is the same as for a preliminary injunction." 19 Fed. Proc., L. Ed. § 47:80 (2016). In order to prevail on a motion for a preliminary injunction and, therefore, on a TRO, a party must establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch*, Inc., 312 F.3d 94, 96 (2d Cir. 2002)).

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (*per curiam*) (internal quotations omitted). "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). "To establish irreparable

harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotations omitted).

## **Discussion**

Based upon the complaint, affirmations of plaintiff and plaintiff's counsel, supporting exhibits, the testimony and arguments at the Show Cause Hearing on June 2, 2016, and for the reasons stated herein, the court grants plaintiff's request for a TRO against Runtown and the Bugu defendants and the court denies plaintiff's requests for a TRO against Mr. Fatogun and Vibesland Entertainment. The terms of the TRO are provided herein. The parties shall appear for a preliminary injunction hearing before the assigned Judge, the Honorable Margo Brodie, on June 14, 2016 at 11:00 a.m. in Courtroom 6F North at the United States Courthouse, 225 Cadman Plaza East, Brooklyn, N.Y. 11201.

**A. Plaintiff has provided specific facts establishing that it will suffer immediate and irreparable harm.**

EricMany Ltd. seeks a temporary restraining order to prevent imminent irreparable harm that will occur before the hearing on the preliminary injunction scheduled for June 14, 2016. Plaintiff's CEO, Prince Okwudili Umenyiora (a/k/a "Dili")

has provided specific facts establishing that irreparable harm is imminent: Plaintiff has invested approximately $600,000 into producing Runtown's debut album "Ghetto University" and developing Runtown's career; Runtown is the sole artist signed to EricMany. Umenyiora Aff. ¶¶ 2, 5, 8, ECF No. 2 at 16-17. Vibesland announced, on its Instagram page, that Runtown was participating in a U.S. tour. Umenyiora Aff. ¶¶ 9-10, ECF No. 2 at 17-18. The tour was scheduled to begin on June 3, 2016 in California. *See id.* ¶ 22, ECF No. 2 at 22. Although plaintiff is under an exclusive worldwide contract with Runtown, plaintiff was excluded from planning the tour and is not mentioned in Runtown's U.S. tour materials. Umenyiora Aff. ¶¶ 9-10, ECF No. 2 at 17-18 and Agreement ¶ 1 ECF No. 2 at 27-32. Plaintiff's CEO, Mr. Umenyiora, further asserts that Runtown's exclusion of plaintiff when participating in "industry activity"[6] will cause irreparable harm to EricMany's reputation, goodwill and professional standing, and will be viewed, by the Nigerian music industry and others as a departure by Runtown from the plaintiff's label. *Id.* ¶¶ 13-17, ECF No. 2 at 19-20. Further, Runtown's departure will likely discourage other artists from

---

[6] The term "industry" is defined by the Agreement as the "music and entertainment industry." See Agreement ¶ 1, ECF No. 2 at 28.

signing with EricMany in the future. *Id.* ¶ 17, ECF No. 2 at 20. Plaintiff further asserts that Runtown is the only artist signed to EricMany, and that Runtown's departure will effectively bankrupt and render EricMany a defunct entity. *Id.* ¶ 14, ECF No. 2 at 19. Plaintiff has no other revenue streams and Runtown's departure and continued exclusion of plaintiff from his "industry activity" is likely to prevent plaintiff from recouping its $600,000 investment. Umenyiora Aff. ¶¶ 4, 5, 13, 14, ECF No. 2 at 17, 19.

"[W]hen courts cannot establish and measure the injury in terms of money, courts have found irreparable harm." *Coastal Distrib., LLC v. Town of Babylon*, No. 05 CV 2032 JS ETB, 2006 WL 270252, at *3 (E.D.N.Y. Jan. 31, 2006), *aff'd as modified*, 216 F. App'x 97 (2d Cir. 2007) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)). "Loss of goodwill and injury to reputation are injuries that are difficult to measure in dollars, and thus, these types of injuries are irreparable harm." *Coastal Distribution,* 2006 WL 270252, at *3 (citing Wright, Miller & Kane, *supra* § 2948.1). "Furthermore, loss of business opportunities and relationships with clients who could 'produce an indeterminate amount of business over years to come' are also hard to measure in dollars and are properly considered

irreparable harm." *Coastal Distrib.,* 2006 WL 270252, at *3 (quoting *Register.com, Inc.*, 356 F.3d at 393).

Here, EricMany has shown that he is at risk of significant financial and reputational damage which will likely lead to a loss of business opportunities, relationships and potentially even bankruptcy. EricMany is likely to suffer harm because of the promotions relating to Runtown's proposed U.S. tour as EricMany was excluded from all the promotional materials. Runtown, with the assistance of the Bugu defendants have excluded EricMany from Runtown's "industry activities" as evidenced by their unilateral engagement of Vibesland. Such exclusion appears to contravene the exclusivity provision of the Agreement and will likely cause EricMany financial and reputational losses. Further, Runtown has made defamatory statements about EricMany on social media that are likely to cause serious reputational harm to EricMany and may lead to a loss of business opportunities.

The totality of potential losses that EricMany will likely face from Runtown's actions are incalculable on this record. As plaintiff's evidence indicates, Nigerian music is on the verge of crossing over into North American popular music as demonstrated by Nigerian musical artist WizKid's performance on

the number one single "One Dance" by Drake, a recording artist who is popular in Canada and the U.S.[7] As noted by plaintiff's submissions, WizKid and Runtown have collaborated on at least two Runtown songs that plaintiff produced; these songs have received over three million YouTube views to date.[8] Umenyiora Aff. ¶¶ 7-8, ECF No. 2 at 10. WizKid's rise into the consciousness of North American popular culture will undoubtedly raise Runtown's profile in North America and in other markets. It will be virtually impossible to quantify the losses that EricMany will suffer if it is not affiliated with Runtown during this critical time for Nigerian music.

    The harm that Runtown's actions may cause to EricMany has already been recognized by the Federal High Court in Lagos, Nigeria. The Nigerian court issued an interim injunction dated May 20, 2016, that enjoins Runtown from, among other things, "attending or participating at any musical, artistic shows or concert as a singer, musical artiste or performer . . . without

---

[7] Drake's "One Dance" (ft. WizKid and Kyla) has been number one on the Billboard Hot 100 chart for three straight weeks. *See* http://www.billboard.com/articles/columns/chart-beat/7386139/drake-one-dance-hot-100-ariana-grande-dangerous (last visited June 2, 2016 at 9:30 a.m.).

[8] *See* Lagos To Kampala (Official Music Video) - Runtown ft. Wizkid, https://www.youtube.com/watch?v=PLYotsLtw78 and Bend Down Pause (Official Music Video) - Runtown ft. Wizkid & Walshy Fire, https://www.youtube.com/watch?v=ovhX7LUzhPs.

the Plaintiff['s] prior approval, during the duration of the Artiste agreement between the Plaintiff and [Runtown]." Nigerian Court Order, ¶ 1, ECF No. 2 at 37. Without determining whether the Nigerian court's order is binding on this court, this court nonetheless finds that the Nigerian court's injunction weighs in favor of granting a temporary restraining order against Runtown because another court of competent jurisdiction has already enjoined defendant Runtown from performing as a singer, musical artiste or performer, etc.

Therefore, plaintiff has established that it is at risk for imminent and irreparable harm as a result of actions by Runtown and the Bugu defendants.[9] *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (where the Second Circuit affirmed the district court's finding of irreparable harm, noting that "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); *Coastal Distrib.*, 2006 WL 270252, at *3 (noting that "loss of business opportunities and

---

[9] Based on credible testimony by Mr. Fatogun at the Show Cause Hearing, the court finds that plaintiff failed to establish irreparable harm as to Mr. Fatogun and Vibesland Entertainment. Therefore, the court denies plaintiff's request for a TRO as to Mr. Fatogun and Vibesland Entertainment.

relationships with clients who could 'produce an indeterminate amount of business over years to come' are also hard to measure in dollars and are properly considered irreparable harm") (quoting *Register.com, Inc.*, 356 F.3d at 393).

**B. With respect to Runtown and the Bugu defendants, plaintiff has established (1) a likelihood of success on the merits and (2) serious question going to the merits making them fair ground for litigation and a balance of hardships tipping deciding in plaintiff's favor.**

Second Circuit case law requires that a party show not only irreparable harm but also either "(a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).

Given the facts presently before the court, it is likely that plaintiff will be successful on the merits arising from Runtown's alleged breach, with the assistance of the Bugu defendants, of Runtown's agreement with plaintiff. The Agreement contains a choice of law provision which states that Nigerian law and processes govern disputes arising under the Agreement. *See* Agreement ¶ 10, ECF No. 2 at 31-32. Notwithstanding the present lack of submissions regarding Nigerian contract law and

the Agreement's dispute resolution provision under Nigerian law, plaintiff has presented evidence indicating that defendant Runtown, assisted by the Bugu defendants, have taken actions that appear to be in direct contravention of several provisions in the Agreement, and that Runtown has engaged in "industry activity" with the Bugu defendants without EricMany's consent or involvement. These actions may constitute a breach of the Agreement. Some of the provisions that are likely to be crucial to a breach of contract analysis are:

- **Para 1:** The Agreement "shall apply worldwide in all terrestrial environments and markets known and unknown. . . . Artiste shall not enter into similar agreement, or agreement dealing with the same subject-matter as is provided for herein, with any third party, save and except as . . . may be herein provided for." Agreement, ECF No. 2 at 27-32.
- **Para 2:** "Parties also vouch to refrain and to abstain from any and all activity or activities which reasonably can result in the circumvention of and or competition with the legal and personal interest(s) of the other Party." *Id.*

- **Para 3:** "Professional, all-aspects management, promotion, third party dealings and representation of the Artiste and of work(s) of the Artiste either by the Label personally or outsourced to an agreeable third party promoter or other specialist agency. . . ." *Id.*
- **Para 3:** "Securing live shows and performances, in public or by private treaty, whereat the Artiste performs before an audience or audiences. . . ." *Id.*
- **Para 4:** "[I]n a situation wherein the Artiste favorably considers industry activity or opportunity—including press conferences and matters in the public domain—nevertheless outside the Agreement, the Artiste shall immediately notify the Label in sufficient detail. . . ." *Id.*

Here, plaintiff asserts that Runtown, assisted by the Bugu defendants, entered into agreements with other parties and engaged promoters that organized and booked the U.S. tour without EricMany's consent or involvement. These actions appear to be in violation of certain terms of the Agreement, and therefore, plaintiff likely has a meritorious breach of contract claim against Runtown.

The court has evaluated the current record and it

finds "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info.*, Inc., 375 F.3d 190, 192 (2d Cir. 2004). As discussed above, plaintiff has presented evidence of a myriad of actions taken by Runtown, assisted by the Bugu defendants, which appear to run in direct contravention of the Agreement. These circumstances present serious questions that may require further court intervention in order to reach a resolution. In fact, the plaintiff and Runtown are litigating in two forums; this court and in the Nigerian Federal High Court. Further, the balance of hardships tips decidedly in plaintiff's favor as it is likely EricMany will suffer not only loss of his investment and financial opportunities, but will likely suffer irreparable harm due to reputational damage, insolvency and becoming a record label without a recording artist because of Runtown and the Bugu defendants' actions.[10] *Roso-Lino Beverage Distrib., Inc. v. Coca-Cola Bottling Co. of N.Y.*, 749 F.2d 124, 125-26 (2d Cir. 1984) (finding that plaintiff's loss of distributorship with defendant, an ongoing relationship representing many years of

---

[10] Because Runtown and the Bugu defendants failed to appear or submit opposition papers, despite having notice of the plaintiff's application, the court considers a record devoid of their opposition.

effort and the livelihood of its husband and wife owners, tips in favor of plaintiff). Thus, plaintiff has satisfied the second prong of the Second Circuit's test for establishing adequate grounds for a temporary restraining order against Runtown and the Bugu defendants.

**C. Plaintiff's attorney has certified in writing the efforts made to give notice to the defendants.**

Plaintiff's counsel made several attempts to contact and notify all named defendants regarding plaintiff's intention to seek an Order to Show Cause and application for a TRO. Plaintiff's counsel spoke to representatives for two of the named defendants on May 28, 2016 and May 30, 2016 and put them on notice that EricMany would be making the present application. *See* ECF No. 2 at 7-8. On May 30, 2016, after several attempts to reach the other defendants, but with no avail, plaintiff's counsel emailed all defendants and advised that the plaintiff would be seeking a temporary restraining order. *Id.* Further notice to, and service on, the defendants of the Order to Show Cause by email or facsimile was approved by the Court's June 1, 2016 Order because Runtown's alleged June 3, 2016 performance was only two days away, and the Show Cause hearing regarding the TRO was scheduled for June 2, 2016 at 2 p.m. Plaintiff's counsel

represented to the court at the Show Cause Hearing that on June 1, 2016, she served all defendants via email with the Order to Show Cause.

Nonetheless, the only defendants to appear on June 2, 2016 were the Vibesland defendants. They opposed the TRO as to themselves and asked that they be dismissed from this action. Based on Mr. Fatogun's credible testimony at the Show Cause Hearing and for the reasons set forth above, the court denies plaintiff's application for a TRO against Mr. Fatogun and Vibesland Entertainment. The court advised the Vibesland defendants that it would respectfully defer their requests for dismissal for decision by the Honorable Judge Brodie. Accordingly, it is hereby

ORDERED that sufficient reason having been shown, therefore, pending the hearing of plaintiff's application for a preliminary injunction, pursuant to Fed. R. Civ. P. Rule 65 on <u>June 14, 2016 at 11 a.m.</u> before the Honorable Margo Brodie in Courtroom 6F North, Runtown and the Bugu defendants are temporarily restrained and enjoined from singing, appearing, hosting, performing, promoting, arranging, facilitating, scheduling, advertising or permitting the performance of Douglas Jack Agu "Runtown" at any venue on or after June 3, 2016; and it

is further

ORDERED that because plaintiff had no knowledge of scheduled performances or promotions by or involving Runtown, other than the performances in the two California clubs and the promotional tour organized by the Vibesland defendants, and because the Vibesland defendants have canceled said tour and agreed to cease all promotional activities on the Vibesland defendants' social media accounts and all other Vibesland promotional vehicles relating to Runtown, the court orders that plaintiff post a bond of **$5,000** to cover the costs and damages sustained by any party found to have been wrongfully restrained pursuant to the Temporary Restraining Order, as provided in Fed. R. Civ. P. 65(c); and it is further

ORDERED that actual notice by personal service or otherwise of a copy of this order upon the defendants or their counsel on or before **June 7, 2016**, be deemed good and sufficient service.

**SO ORDERED.**

Dated:   June 3, 2016
         7:45 p.m.
         Brooklyn, New York

/s/
Kiyo A. Matsumoto
United States District Judge